## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALCO INDUSTRIES, INC., 820 Adams Avenue Trooper, Pennsylvania 19403 on behalf of itself and all others similarly situated, | : : : : : : |
| Plaintiff, | : : |
| v. | : : : |
| DUPONT DOW ELASTOMERS LLC, 300 Bellevue Parkway, Suite 300 Wilmington, Delaware 19809 | : : : : |
| Defendant. | : : : |

CASE NUMBER 1:04CV00588

JUDGE: Henry H. Kennedy

DECK TYPE: Antitrust

DATE STAMP: 04/09/2004

JURY TRIAL DEMANDED

### CLASS ACTION COMPLAINT

Plaintiff, Alco Industries, Inc., by its undersigned counsel, individually and on behalf of the class identified below, brings this action for treble damages, injunctive relief and costs of suit under the antitrust laws of the United States, Section 1 of the Sherman Act, against defendant DuPont Dow Elastomers LLC ("DDE"). In support of its complaint against defendant, plaintiff alleges as follows:

### NATURE OF THE ACTION

1.      This action arises from a conspiracy to fix, maintain or stabilize prices, allocate markets and unreasonably restrain trade for the sale of polychloroprene rubber (referred to as "PCP") by manufacturers of PCP, which resulted in supra-competitive prices for PCP. PCP is also known as polychloroprene, chloroprene rubber, CR and neoprene. PCP is a versatile synthetic rubber used in a variety of products including contact adhesives, lamination, foam

bonding and pressure sensitive applications.  DDE is the largest manufacturer and seller of PCP in the United States.

2.      In bringing this action, plaintiff seeks to recover treble damages for violations of the United States antitrust laws.  During the relevant time period, DDE was involved in the production, manufacture, distribution and/or sale of PCP to customers in the United States and throughout the world.  As further alleged herein, during the period from at least January 1, 1999 through December 31, 2003 (the "Class Period"), defendant and its co-conspirators agreed, combined and conspired with each other to fix, maintain or stabilize prices and allocate markets for the sale of PCP.  As a result of defendant's unlawful conduct, plaintiff and members of the class paid prices for PCP higher than they would have paid in a competitive market and have been damaged thereby.

## JURISDICTION AND VENUE

3.      Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages, injunctive relief, and the costs of this suit, including reasonable attorneys' fees, for defendant's violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

4.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1337 and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

5.      Venue is proper in this district pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15(a) and 22, and 28 U.S.C. § 1391(b), (c) and (d), because during the Class Period defendant transacted business, was found, or had agents in this district, and because a

substantial part of the events giving rise to plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this district.

6.      This Court has *in personam* jurisdiction over the defendant because it transacted business throughout the United States, manufactured, sold, shipped and delivered substantial quantities of PCP throughout the United States, had substantial contacts with the United States, and was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons and entities residing in, located in, or doing business throughout the United States.

## PLAINTIFF

7.      Plaintiff Alco Industries, Inc. is a Delaware corporation with its principal place of business located at 820 Adams Avenue, Trooper, Pennsylvania 19403. During the Class Period, plaintiff purchased PCP directly from the defendant and/or its co-conspirators, and has been injured in its business and property by reason of the antitrust violations alleged in this Complaint.

## DEFENDANT

8.      Defendant DuPont Dow Elastomers LLC ("DDE") is a Delaware corporation with its corporate headquarters located at 300 Bellevue Parkway, Wilmington, Delaware. DDE is a joint venture formed by The Dow Chemical Company and E.I. DuPont De Nemours & Company in 1996. At all relevant times, DDE was engaged in the manufacturing, marketing, distribution and sales of PCP in the United States and elsewhere.

## DEFENDANT'S AGENTS AND CO-CONSPIRATORS

9.      Wherever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction

-3-

by or through its officers, directors, agents, employees or representatives while they have actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

10.     The acts alleged in this Complaint to have been done by the defendant were authorized, ordered and condoned by its parent companies and authorized, ordered and performed by its officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of their business affairs.

11.     Various persons and entities, not named as defendants herein, have participated as co-conspirators in the violations alleged herein and have performed acts and made statements in furtherance thereof.

## INTERSTATE TRADE AND COMMERCE

12.     Plaintiff incorporates by reference as if fully set forth herein, the allegations contained in paragraphs 1-11 of this Complaint.

13.     The activities of defendant, and its co-conspirators, as described in this Complaint, were within the flow of and substantially affected, interstate commerce.

14.     During the time period covered by this Complaint, defendant manufactured, sold and/or distributed PCP throughout the United States.

15.     Defendant has manufactured, sold and shipped substantial quantities of PCPs in a continuous and uninterrupted flow of interstate commerce to customers located in states other than the states in which the defendant produces PCP.

## CLASS ACTION ALLEGATIONS

16.    Plaintiff brings this action on its own behalf and as a class action under the

provisions of Rules 23(a), and (b)(3) of the Federal Rules of Civil Procedure on behalf of all

members of the following class:

> All persons and entities who purchased polychloroprene in the
> United States, or from a facility located in the United States,
> directly from the defendant or its co-conspirators from January 1,
> 1999 through December 31, 2003. Excluded from the class are all
> governmental entities, the defendant, its co-conspirators and their
> respective parents, subsidiaries and affiliates.

17.    Because such information is in the exclusive control of the defendant and/or its

co-conspirators, plaintiff does not know the exact number of class members. Due to the nature of

the trade and commerce involved, however, plaintiff believes that class members number at least

in the hundreds and are sufficiently numerous and geographically dispersed throughout the

United States so that joinder of all class members is impracticable.

18.    Plaintiff is a member of the class, plaintiff's claims are typical of the claims of the

class members, and plaintiff will fairly and adequately protect the interests of the class. Plaintiff

is a direct purchaser of PCP from the defendant and/or its co-conspirators and its interests are

coincident with and not antagonistic to those of the other members of the class. In addition,

plaintiff is represented by counsel who are competent and experienced in the prosecution of

antitrust and class action litigation.

19.    There are questions of law or fact common to the class, including:

> a.    Whether defendant and its co-conspirators engaged in a combination and
>
>        conspiracy among themselves to fix, raise, maintain and/or stabilize prices

of PCP sold in the United States and/or to allocate markets and customers

for the sale of PCP in the United States;

b.      The identity of the participants in the conspiracy;

c.      The duration of the conspiracy alleged in this Complaint and the nature

and character of the acts performed by defendant and its co-conspirators in

furtherance of the conspiracy;

d.      Whether the alleged conspiracy violated Section 1 of the Sherman Act;

e.      Whether the conduct of defendant and its co-conspirators, caused injury to

the business or property of plaintiff and the other members of the class;

f.      The effect of defendant's conspiracy on the prices of PCP sold in the

United States during the Class Period;

g.      The appropriate measure of damages sustained by plaintiff and other

members of the class; and

h.      Whether plaintiff and the class are entitled to injunctive relief.

20.     The questions of law and fact common to the members of the class predominate

over any questions affecting only individual members, including legal and factual issues relating

to liability damages.

21.     A class action is superior to other methods for the fair and efficient adjudication

of this controversy.  Treatment as a class action will permit a large number of similarly situated

persons to adjudicate their common claims in a single forum simultaneously, efficiently, and

without the duplication of effort and expense that numerous individual actions would engender.

Class treatment will also permit the adjudication of relatively small claims by many class

members who otherwise could not afford to litigate an antitrust claim such as is asserted in this
Complaint.

22.     This class action presents no difficulties in management that would preclude
maintenance as a class action.

23.     Finally, the class is readily definable and is one for which records likely exist in
the files of defendant's and their co-conspirators.

## POLYCHLOROPRENE ("PCP")

24.     Polychloroprene ("PCP"), is one member in a family of synthetic rubber products.
PCP, like all other synthetic rubber, is man-made and is produced in manufacturing plants that
synthesize it from petroleum and other minerals.

25.     PCP is a versatile synthetic rubber that was originally developed as an oil-resistant
substitute for natural rubber.  PCP resists degradation from sun, ozone and weather, performs
well in contact with oils and many chemicals, remains useful over a wide temperature range,
displays outstanding physical toughness, resists burning inherently better than exclusively
hydrocarbon rubbers, and has outstanding resistance to damage caused by flexing and twisting.

26.     PCP is not a final product, but rather a raw material from which the final products
may be formulated.  PCP is used in a variety of products including contact adhesives, lamination,
foam bonding and pressure sensitive applications.  They can also be used for dipped products
like gloves and coatings as well as cable and wire jacketing.  PCP is also used in the automotive
industry for various parts such as transmission belts, homo-cinetic joints and motor air conduits.
PCP is a commodity product that does not vary materially depending upon manufacturer, such

that the PCP manufactured by the defendant is fungible with PCP manufactured by any other PCP producer.

27.     The PCP industry in the United States and worldwide is concentrated, thus facilitating coordination of prices of PCP.

28.     The defendant and its co-conspirators are collectively the principal manufacturers and sellers of PCP domestically and worldwide.

## VIOLATIONS ALLEGED

29.     Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1-28 of this Complaint.

30.     Beginning at least as early as January 1, 1999 and continuing at least through December 31, 2003, the exact dates being unknown to plaintiff, defendant and its co-conspirators engaged in a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for PCP in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

31.     This illegal contract, combination and conspiracy consisted of a continuing agreement, understanding and concert of action among defendant and its co-conspirators, the substantial terms of which were:

    a.      To fix, maintain and stabilize prices for the sale of PCP throughout the United States and elsewhere;

    b.      To allocate amongst themselves areas in the United States for the purpose of selling PCP;

-8-

c.   To participate in meetings and conversations wherein market allocation and the price of PCP sold in the United States were discussed; and

d.   To enter into agreements during those meetings and conversations to charge prices at certain levels for PCP sold in the United States, to increase and maintain prices of PCP sold in the United States and to allocate among major producers of PCP the market shares of PCP to be sold in the United States;

e.   To exchange information on sales of PCP in the United States for the purpose of monitoring and enforcing adherence to the agreed-upon prices and market shares;

f.   To issue price announcements and price quotations in accordance with the agreements reached;

g.   To sell PCP at non-competitive prices in accordance with the agreements reached; and

h.   To sell PCP only in agreed-upon territories in accordance with the agreements reached.

32.   The foregoing allegations are likely to have evidentiary support after a reasonable opportunity for discovery.

## FRAUDULENT CONCEALMENT

33.   Throughout the relevant period, defendant and its co-conspirators affirmatively and fraudulently concealed their unlawful conduct against plaintiff and the class.

34.     Plaintiff and the members of the class did not discover, and could have not discovered through the exercise of reasonable diligence, that defendant and its co-conspirators were violating the antitrust laws as alleged herein until shortly before this litigation was commenced. Nor could plaintiff and the members of the class have discovered the violations earlier than that time because defendant and its co-conspirators conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through various other means and methods designed to avoid detection. To the extent that plaintiff had any information regarding collusion with respect to PCP, plaintiff exercised due diligence.

35.     Defendant and its co-conspirators engaged in a successful, illegal price-fixing conspiracy with respect to PCP, which they affirmatively concealed, and which by its nature was inherently self concealing, in at least the following respects:

  a.     By meeting secretly to discuss the prices of PCP sold in the United States and elsewhere;

  b.     By agreeing among themselves at meetings and in communications not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme; and

  c.     By giving false and pretextual reasons for the pricing of PCP sold by them during the Class Period and by describing such pricing falsely as being the result of competitive factors rather than collusion.

36.     As a result of defendant's and its co-conspirators' fraudulent concealment of their

conspiracy, plaintiff and the class assert the tolling of any applicable statute of limitations

affecting the rights of action of plaintiff and the members of the class.

## INJURY TO PLAINTIFF AND THE CLASS

37.     The illegal combination and conspiracy alleged herein has had the following

effects, among others:

    a.      Price competition in the sale of PCP has been restrained, suppressed

            and/or eliminated;

    b.      Prices for PCP sold by defendant and its co-conspirators have been fixed,

            raised, maintained and stabilized at artificially high, non-competitive

            levels; and

    c.      Direct purchasers of PCP from defendant, its co-conspirators, or their

            subsidiaries or controlled affiliates have been deprived of the benefit of

            free and open competition.

38.     As a direct and proximate result of the illegal conspiracy, plaintiff and the

members of the class have paid more for PCP than they would have paid in the absence of the

illegal conspiracy and have suffered damages in an amount presently undetermined.

## DAMAGES

39.     During the period of the antitrust violations alleged herein, plaintiff and members

of the class directly purchased PCP from defendant and/or its co-conspirators and, because of

these antitrust violations, paid more for such products than they would have paid absent such

violations.

-11-

40.     As a proximate result of defendant's and its co-conspirators' unlawful agreement and conspiracy, plaintiff and the members of the class have suffered injury and damages in their business and property in an amount to be determined.

## REQUEST FOR RELIEF

WHEREFORE, plaintiff prays that:

A.     The Court determine that this action may be maintained as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure and directing that reasonable notice be provided in compliance with Fed. R. Civ. P. 23(c)(2);

B.     The Court adjudge and decree that the contract, combination and conspiracy alleged herein is an unreasonable restraint of trade in violation of Section 1 of the Sherman Act;

C.     That judgment be entered against defendant and in favor of plaintiff and the class it represents for damages as allowed by law as determined to have been sustained by them, together with costs of suit, including reasonable attorneys' fees;

D.     Defendant, co-conspirators, successors, assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf of defendant or in concert with it, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of action, or adopting any practice, plan, program or design having a similar purpose or effect in restraining competition;

E.     The Court award plaintiff and the class it represents attorneys' fees and costs, and pre-judgment and post-judgment interest as permitted by law; and

-12-

F.      The Court award plaintiff and the class it represents such other and further relief as may be necessary and appropriate.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

Dated: April 9, 2004

Respectfully submitted,

_Michael D. Hausfeld / JJK_

Michael D. Hausfeld (D.C. Bar No. 153742)
Stewart M. Weltman
COHEN, MILSTEIN, HAUSFELD
    & TOLL, P.L.L.C.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C.  20005
(202) 408-4600
(202) 408-4699 – Facsimile

Paul F. Bennett
GOLD BENNETT CERA
    & SIDENER, LLP
595 Market Street, Suite 2300
San Francisco, CA  94105
(415) 777-2230
(415) 777-5189 – Facsimile

Howard J. Sedran
LEVIN, FISHBEIN, SEDRAN
    & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA  19106
(215) 592-1500
(215) 592-4663 – Facsimile

Anthony J. Bolognese
BOLOGNESE & ASSOCIATES, LLC
One Penn Center Plaza
1617 JFK Blvd., Suite 650
Philadelphia, PA  19103
(215) 814-6750
(215) 814-6764 – Facsimile

***Counsel for Plaintiff***